IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CENTURY SURETY COMPANY,

        Plaintiff,

    v.

FRANCISCO LOPEZ dba NERI AUTO
SALES; HERIBERTO BARAJAS; TANIA
DENISE OROZCO, as Conservator for
Eric Barajas, a Minor Child; RIGOBERTO
OROZCO-GONZALES, JR., Personal
Representative for the Estate of Ivon C.
Barajas-Orozco; MARIA BARAJAS-
BALLINES;

        Defendants.

No. 3:16-cv-00571-HZ

OPINION & ORDER

Andrew E. Passmore
Ronald J. Clark
BULLIVANT HOUSER BAILEY, PC
300 Pioneer Tower, 888 SW Fifth Avenue
Portland, OR 97204

    Attorneys for Plaintiff

Jay Richard Chock
Jeffrey Hansen
CHOCK BARHOUM LLP
121 SW Morrison Street, Suite 415
Portland, OR 97204

      Attorneys for Defendant Francisco Lopez

Douglas P. Oh-Keith
Thomas D. D'Amore
D'AMORE LAW GROUP, P.C.
4230 Galewood Street, Suite 200
Lake Oswego, OR 97035

Kathryn H. Clarke
PO Box 11960
Portland, OR 97211

      Attorneys for Defendants Heriberto Barajas,
      Tania Denise Orozco, and Rigoberto
      Orozco-Gonzales, Jr.

HERNÁNDEZ, District Judge:

      Plaintiff Century Surety Company ("Century Surety") brings this motion for partial summary judgment on the issue of whether it has a duty to defend Defendant Francisco Lopez, dba Neri Auto Sales ("Neri Auto"), in an underlying state court lawsuit. Century Surety brings this motion against Defendants Neri Auto, Maria Barajas Ballines, Heriberto Barajas, Tania Denise Orozco, and Rigoberto Orozco-Gonzales, Jr. (collectively, "Defendants," with the exception of Ms. Barajas Ballines, who failed to appear and was subject to an entry of default).

      According to Century Surety, two clauses in the insurance policy issued to Neri Auto serve to exclude Century Surety from any duty to defend Neri Auto in the underlying lawsuit: (1) a "Transfer of Ownership Exclusion," and (2) a "Tires Exclusion." The Court agrees that both exclusions relieve Century Surety from the duty to defend

2 – OPINION & ORDER

Neri Auto and, therefore, Century Surety's motion for partial summary judgment is granted.

## BACKGROUND

### I.    The State Court Action

On June 1, 2015, Mr. Barajas, Ms. Orozco, and Mr. Orozco-Gonzales, Jr. filed suit ("Underlying Lawsuit") against Neri Auto, among others, in Multnomah County Circuit Court. Clark Decl. Ex. B, ECF 26-2. On November 9, 2015, the plaintiffs in the Underlying Lawsuit filed an Amended Complaint. Clark Decl. Ex. C ("Underlying Complaint"), ECF 26-3.

The relevant allegations in the Underlying Complaint are that Neri Auto sold Ms. Barajas Ballines a 2003 Ford Expedition SUV equipped with a defective tire. Id. at ¶¶ 7, 13. Within days of purchasing the SUV, the tire tread separated from the tire carcass while Ms. Barajas Ballines was driving, causing an accident in which passengers Heriberto Barajas and Eric Barajas were injured and Ivon Barajas-Orozco, who was pregnant, was killed. Id. at ¶¶ 14-18.

The Underlying Complaint contains four claims against Neri Auto: (1) product liability for failure to warn, instruct, and train as to the defective tire; (2) general negligence regarding the risks of the defective tire; (3) strict liability as to the sale of the defective tire; and (4) negligent infliction of emotional distress connected to injuries and the witnessing of Ms. Barajas-Orozco's death. Id. at ¶¶ 50-65, 72-76. Century Surety is currently providing a defense to Neri Auto in the Underlying Lawsuit subject to a full reservation of rights.

## II.    The Insurance Policy

Century Surety issued a "Commercial Lines Policy" ("the Policy") to Neri Auto. Clark Decl. Ex. A, ECF 26-1. The Policy provides liability coverage for certain "covered 'autos.'" Id. at 20. The Policy provides that Century Surety will defend and indemnify Neri Auto against "suits"[1] seeking damages for bodily injury and property damage caused by an accident involving the ownership or use of covered autos. Id. at 21.

However, the Policy also contains several "exclusions." Century Surety has no duty to defend any insured against a suit seeking damages for bodily injury or property damage to which the Policy does not apply. Id. For example, the Policy does not cover bodily injury or property damage occurring after possession of an auto "has been surrendered to another person pursuant to sale, conditional sale, gift, abandonment, or lease." Id. at 40. In addition, the Policy excludes coverage for bodily injury and property damage resulting from the sale of any tires, the failure to issue warnings related to the condition of the tires, and various other circumstances under which tires are the cause of an injury. Id.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

---

[1] The Policy defines "suit," among other things, as a civil proceeding in which damages because of bodily injury or property damages to which the Policy applies, are claimed. Policy at 35.

believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." <u>Fed. Trade Comm'n v. Stefanchik</u>, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. <u>Bias v. Moynihan</u>, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing <u>Celotex</u>, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. <u>Suever v. Connell</u>, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. <u>Earl v. Nielsen Media Research, Inc.</u>, 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## DISCUSSION

Century Surety asks this Court to grant partial summary judgment declaring that Century Surety does not have a duty to defend Neri Auto in the Underlying Lawsuit. According to Century Surety, the SUV had been sold to Ms. Barajas Ballines and, thus, is not a "covered auto" because of the Policy's Transfer of Ownership Exclusion. In addition, Century Surety argues that it does not have a duty to defend because the bodily injury or property damage at issue in the Underlying Complaint resulted from or was

related to the defective tire and, thus, is subject to the Policy's Tires Exclusion clause. The Court grants Century Surety's motion.

Oregon law governs this Court's construction of the Policy and Century Surety's duty to defend. <u>Larson Const. Co. v. Or. Auto. Ins. Co.</u>, 450 F.2d 1193, 1195 (9th Cir. 1971); <u>Allstate Ins. Co. v. Morgan</u>, 123 F. Supp. 3d 1266, 1272 (D. Or. 2015). Under Oregon law, "[a]n insurer has a duty to defend if the claimant can recover against the insured under the allegations of the complaint on any basis for which the policy affords coverage." <u>Falkenstein's Meat Co. v. Md. Cas. Co</u>, 91 Or. App. 276, 279, 754 P.2d 621, 623 (1988).

"Whether an insurer has a duty to defend presents a question of law, which is determined by comparing the terms of the insurance policy with the allegations of the complaint against the insured." <u>Drake v. Mut. of Enumclaw Ins. Co.</u>, 167 Or. App. 475, 478, 1 P.3d 1065, 1068 (2000).

> Even if the complaint alleges some conduct outside the coverage of the policy, the insurer may still have a duty to defend if certain allegations of the complaint, without amendment, could impose liability for conduct covered by the policy. Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured.

<u>Ledford v. Gutoski</u>, 319 Or. 397, 400, 877 P.2d 80, 82 (1994) (citation omitted). Conversely, "[i]f the complaint does not contain allegations of covered conduct ..., then the insurer has no duty to defend." <u>Abrams v. Gen. Star Indem. Co.</u>, 335 Or. 392, 400, 67 P.3d 931, 935 (2003); <u>see also</u> <u>Siltronic Corp. v. Employers Ins. Co. of Wausau</u>, No. 3:11-CV-1493-ST, 2015 WL 181785, at *4 (D. Or. Jan. 14, 2015).

The Court must construe exclusion clauses narrowly. <u>Am. Econ. Ins. Co. v. Hughes</u>, 121 Or. App. 183, 186, 854 P.2d 500, 501 (1993). Further, any ambiguity in an

exclusion clause is strictly construed against the insurer, who drafted the policy. <u>Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Or.</u>, 313 Or. 464, 470, 836 P.2d 703, 706 (1992). However,

> [f]or a term to be ambiguous in a sense that justifies resort to the foregoing rule . . . there needs to be more than a showing of two plausible interpretations[.] Competing plausible interpretations simply establish ambiguity that will require some interpretive act by the court. This triggers a series of analytical steps, any of which may resolve the ambiguity.

<u>Id.</u>

## I.      Transfer of Ownership Exclusion

Century Surety does not have a duty to defend Neri Auto because of the Policy's Transfer of Ownership Exclusion. The Policy provides that "this insurance does not apply to":

> <u>16. Transfer of Ownership</u>
>
> If your business is shown in the Declarations as an "auto" dealership, then this insurance does not provide coverage for your customers for "bodily injury" or "property damages" occurring after possession of an "auto" has been surrendered to another person pursuant to sale, conditional sale, gift, abandonment, or lease.

Policy at 40.

The Underlying Complaint alleges that Neri Auto "sold" the SUV to Ms. Barajas Ballines on June 10, 2013, two weeks before the accident. Underlying Complaint ¶¶ 7, 12. Century Surety contends that it does not have a duty to defend Neri Auto because the Policy does not provide coverage for the customers of an "auto" dealership for bodily injury or property damage occurring after the "auto" was sold by Neri Auto.

Defendants argue that the Transfer of Ownership Exclusion does not apply for four reasons[2]: (1) the plaintiffs in the Underlying Lawsuit have filed a stipulated motion for leave to file a second amended complaint in they allege the SUV was "sold and/or provided" to Ms. Barajas Ballines; (2) Neri Auto is not an "auto" dealership as defined by the Policy; (3) the Transfer of Ownership Exclusion excludes coverage for Neri Auto's customers, not for bodily injury for which Neri Auto may be liable; and (4) there is a question of fact as to whether the SUV was sold or was still owned by Neri Auto at the time of the incident.

A.  Second Amended Complaint

Neri Auto contends that this Court should treat the proposed Second Amended Complaint in the Underlying Lawsuit as the operative complaint for the purpose of determining whether Century Surety has a duty to defend. The Court disagrees.

Neri Auto submits a Stipulated Motion for Leave to File Second Amended Complaint, which was filed in Multnomah County Circuit Court in the Underlying Lawsuit on September 21, 2016. Hansen Decl. Ex. 6, ECF 49-6. The Motion includes a draft of the Second Amended Complaint; however, there is no indication that this complaint has actually been filed in the case or served upon Century Surety. Id. The Second Amended Complaint changes the allegation that Neri Auto "sold" the SUV to Ms. Barajas Ballines to an allegation that Neri Auto "sold and/or provided" the SUV. Id. at ¶¶ 8, 9. Thus, Neri Auto contends that the Transfer of Ownership Exclusion does not apply because the complaint leaves open the possibility that the SUV was not "surrendered to

---

[2] Neri Auto and the other defendants each filed a response to Century Surety's motion. The Court addresses all of their arguments here.

[Ms. Barajas Ballines] pursuant to sale, conditional sale, gift, abandonment, or lease," but, instead, was loaned to her. See Policy at 40.

Neri Auto fails to cite, and this Court does not find, legal authority for the proposition that this Court should consider proposed amendments to the Underlying Complaint in determining whether Century Surety has a duty of defend Neri Auto. To the contrary, the Oregon Court of Appeals has explained that this Court should only consider a complaint that existed at the time that the insured "tendered the defense."[3] W. Equities, Inc. v. St. Paul Fire & Marine Ins. Co., 184 Or. App. 368, 370, 56 P.3d 431, 432 (2002). In St. Paul Fire, the Oregon Court of Appeals wrote:

> Both parties assume that we should consider the initial complaint and the two amended complaints in deciding defendant's duty to defend. However, at the time that Smith tendered the defense, only the first complaint had been filed. Therefore, the first complaint is the only one that we consider in determining whether defendant had a duty to defend plaintiffs.

Id. at 370 n.1, 56 P.3d at 432 n.1; see also Marleau v. Truck Ins. Exch., 333 Or. 82, 91, 37 P.3d 148, 153 (2001) ("An insurer has a duty to defend an insured only if the allegations of the complaint in the underlying action, without amendment and with ambiguities construed in favor of the insured, could impose liability for conduct covered by the policy.") (emphasis added); Oregon Ins. Guar. Ass'n v. Thompson, 93 Or. App. 5, 10 n. 5, 760 P.2d 890, 893 n. 5 (1988) ("The insurer's knowledge of facts not alleged in the complaint is irrelevant.").

Similarly, the Ninth Circuit Court of Appeals has explained that the determination of potential coverage is made at the time the lawsuit is tendered to the insurance company. The Upper Deck Co., LLC v. Fed. Ins. Co., 358 F.3d 608, 613 (9th Cir. 2004).

---

[3] "A tender of defense is an offer by the policyholder to the insurer to allow the insurer to defend the policyholder in a lawsuit." Faust v. The Travelers, 55 F.3d 471, 472 (9th Cir. 1995).

"Once an insurer determines, on the basis of the complaint and the facts known to it at the time of tender, that there is no potential for coverage, the insurer does 'not have a continuing duty to investigate or monitor the lawsuit to see if the third party later made some new claim, not found in the original lawsuit.'" Id. If, as in this case, new extrinsic evidence "raises a potential covered claim, the insured should submit a new tender of defense." Id.

A recent case from this District discussed a similar argument to the one presented by Defendants. In State Farm Fire & Cas. Co. v. Sauer, the parties disputed whether the court should deem the plaintiff's complaint amended by interlineation for the purpose of determining whether the defendants had a duty to defend. No. 3:14-CV-01274-BR, 2015 WL 510963, at *3 (D. Or. Feb. 6, 2015). Judge Brown explained that Oregon Rule of Civil Procedure 23 "provides a complaint 'may be amended by a party once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party.'" Id. (quoting Or. Civ. P. 23). In State Farm Fire, the docket in the underlying action did not reflect any order permitting an amendment of the complaint and the time had passed for the complaint to be amended as a matter of course. Judge Brown wrote:

> The Court notes Defendants did not offer any authority at oral argument for the proposition that the Court can look to a proposed amendment to a complaint in the underlying matter when evaluating a liability insurer's duty to defend in such an action.
>
> The Court, therefore, concludes on this record that the second amended complaint in the underlying action has not been amended and the evaluation of Plaintiff's duty to defend depends upon the "four corners" of Stahl's last-filed complaint.

Id.

Thus, as cases from the Oregon Court of Appeals, the Ninth Circuit Court of Appeals, and this District all demonstrate, the only relevant complaint is the one that existed when Neri Auto tendered the defense to Century Surety. Accordingly, this Court will not consider the proposed Second Amended Complaint in its analysis of whether Century Surety has a duty to defend.

    B.   Policy Definition of "Auto" Dealership

Defendants next argue that there is a question of fact as to whether Neri Auto is an "auto" dealership as required under the Transfer of Ownership Exclusion. The Transfer of Ownership Exclusion applies "[i]f your business is shown in the Declarations as an 'auto' dealership." Policy at 40. The Declarations page of the Policy states that Neri Auto's "business description" is "used auto sales." Id. at 3. In addition, there is a circle checked next to the word "individual." Id. Nowhere on the page does it state that Neri Auto is an "auto" dealership. Id. Nor is "auto dealership" a defined term in the Policy or in statute. Defendants contend that this term is vague, as used in the Policy, and should thus be construed against Century Surety. The Court disagrees.

The Transfer of Ownership Exclusion places the word "auto" in quotation marks, not the words "auto dealership." Id. at 40. "Auto" is defined elsewhere in the Policy as "a land motor vehicle, 'trailer,' or semitrailer." Id. at 33. Thus, the Transfer of Ownership exclusion applies to any dealership of autos, as defined by the Policy. The question is whether a business of "used auto sales" is a dealership of autos.

Interpretation of an insurance policy is a question of law, and the Court's task is to ascertain the intention of the parties to the insurance policy. Holloway v. Republic

Indem. Co. of Am., 341 Or. 642, 649–50, 147 P.3d 329, 333–34 (2006). The Oregon

Supreme Court has explained:

> We determine the intention of the parties based on the terms and conditions of the insurance policy. If an insurance policy explicitly defines the phrase in question, we apply that definition. If the policy does not define the phrase in question, we resort to various aids of interpretation to discern the parties' intended meaning. Under that interpretive framework, we first consider whether the phrase in question has a plain meaning, *i.e.,* whether it is susceptible to only one plausible interpretation. If the phrase in question has a plain meaning, we will apply that meaning and conduct no further analysis. If the phrase in question has more than one plausible interpretation, we will proceed to the second interpretive aid. "That is, we examine the phrase in light of the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole. If the ambiguity remains after the court has engaged in those analytical exercises, then 'any reasonable doubt as to the intended meaning of such [a] term[ ] will be resolved against the insurance company. However, as this court has stated consistently, a term is ambiguous *only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.,* continue to be reasonable, despite our resort to the interpretive aids outlined above.

Id. (internal quotations and citations omitted).

The Policy defines "auto" but does not define "dealership." The question,

therefore, is whether "dealership" has a plain meaning. The parties do not cite, and this

Court does not find, any authority specifically on point that defines the term. However,

dictionary definitions are helpful. Ortiz v. State Farm Fire & Cas. Co., 244 Or. App. 355,

360, 260 P.3d 678, 681 (2011) (explaining that a common aid of interpretation is the

dictionary); see also S. California Counseling Ctr. v. Great Am. Ins. Co., No. 14-56169,

2016 WL 3545350, at *1 (9th Cir. June 28, 2016) (relying on dictionary definitions to

determine the plain meaning of a term in an insurance policy exclusion).

Black's Law Dictionary defines "dealership" as "a business that sells a particular

company's products, such as cars, esp. as part of a franchise relationship." Black's Law

Dictionary (10th ed. 2014). Webster's Dictionary defines dealership as "an authorized

sales agency" or "the business of a distributor." Webster's Third New International Dictionary (Unabridged) (2002).

It is clear from such definitions that a business that is described as "used auto sales" is included within the definition of an auto dealership. Neri Auto, as a "used auto sales" business, is a business that sells a particular product, used cars. Therefore, the Transfer of Ownership Exclusion, which applies to "auto" dealerships, applies to Neri Auto.

    C.  Policy Exclusion of Coverage for the Customer

Next, Defendants argue that the Transfer of Ownership Exclusion excludes coverage only for Neri Auto's "customers" for bodily injury or property damages occurring after possession of an auto has been surrendered, but does not exclude coverage for Neri Auto for injury or damage resulting from Neri Auto's own conduct. See Policy at 40. However, this argument is a red herring. While Defendants are correct that the Transfer of Ownership Exclusion excludes coverage for customers, this does not mean that the Policy necessarily includes coverage for Neri Auto for bodily injury or property damages occurring after an auto has been sold.

Instead, as Century Surety points out, other parts of the Policy exclude coverage for Neri Auto after an auto has been sold. The Policy provides liability coverage for "owned 'autos'" and "non-owned 'autos' used in your garage business." Policy at 9, 19. The Policy defines each of these categories of autos. Id. at 19. The Policy also provides liability coverage for "garage operations,"[4] "all operations necessary or incidental to a

---

[4] The full definition of "garage operations" in the Policy is:
   "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated

garage business." Id. at 20, 21 34. The Policy does not provide liability coverage for

autos that are sold by Neri Auto because they are neither "owned 'autos'" nor "non-

owned 'autos' used in your garage business." Further, the accident in this case was not an

operation incidental to a garage business. Therefore, Defendants' argument is unavailing.

D.  Question of Fact Regarding Sale of SUV

Finally, Defendants argue that this Court should deny Century Surety's Motion

for Partial Summary Judgment because there is an issue of fact as to whether the SUV

was sold or provided to Ms. Barajas Ballines.

The parties agree that, in general, the Court is limited to considering only the facts

alleged in the complaint and the Policy in order to determine if there is a duty to defend.

See Ledford, 319 Or. at 400, 877 P.2d at 82. However, Defendants argue that an

exception to this general rule applies when the Court attempts to determine whether an

individual was "an insured under a policy." Barajas Defs.' Opp. 8 (citing Navigators Ins.

Co. v. K & O Contracting LLC, No. 3:12-CV-02076-HU, 2013 WL 6383878, at *5 (D.

Or. Dec. 4, 2013)). According to Defendants, Century Surety has raised the Transfer of

Ownership Exclusion to show that the driver, Ms. Barajas Ballines, is not an "insured"

because her coverage was cut off after the permanent transfer of the auto took place.

Defendants argue that the Court may look to extrinsic evidence to determine whether in

fact the auto was permanently transferred and, thus, whether coverage for Ms. Barajas

Ballines ended.

Contrary to Defendants' argument, this is not a case where the Court must look to

extrinsic evidence to determine whether an individual who has tendered a defense to an

_____

in Section of this coverage form as covered "autos." "Garage operations" also include all
operations necessary or incidental to a garage business. Policy at 34.

insurance company is an insured under the Policy. The Oregon Court of Appeals recently

provided a detailed explanation of the limited exception that Defendants seek to apply:

> Generally, the determination of the duty to defend is confined to the complaint
> and the policy, but the rule has an exception. In <u>Fred. Shearer & Sons. Inc. v.
> Gemini Ins. Co.</u>, 237 Or. App. 468, 476, 240 P.3d 67 (2010), <u>rev. den.</u>, 349 Or.
> 602, 249 P.3d 123 (2011) we noted that extrinsic evidence could be used to
> address "the preliminary question: whether the party seeking coverage was
> actually an *insured* within the meaning of the policy." <u>Id.</u> at 476, 240 P.3d 67
> (emphasis in original). The reasons for such an exception are that "an insured's
> relationship with its insurer may or may not be relevant to the merits of the
> plaintiffs case in the underlying litigation [,]" and the plaintiff is not required to
> plead facts to "establish the nature of the defendant's relationship to some other
> party or to an insurance company in order to prove its claim." <u>Id.</u> at 477, 240 P.3d
> 67. We rejected a rigid application of the so-called four-corners rule, which looks
> only to the four corners of the two documents to determine whether a party is an
> insured. <u>Id.</u> at 478, 240 P.3d 67 (treating as "analytically distinct" the inquiries
> into "(1) whether [the plaintiff] was an 'insured' within the meaning of the policy
> and (2) if so, whether the alleged conduct falls within the scope of coverage").

<u>W. Hills Dev. Co. v. Chartis Claims, Inc.</u>, 273 Or. App. 155, 162, 359 P.3d 339, 343

(2015), <u>review allowed,</u> 359 Or. 166, 376 P.3d 283 (2016)

This case is unlike the <u>Shearer</u> case discussed in <u>West Hills</u> because it is possible

to determine from the Underlying Complaint and the Policy that the individual seeking

coverage, Neri Auto, is an insured under the Policy. Century Surety does not dispute this

fact. The issue here is whether the insured's Policy covers the incident involving Ms.

Barajas Ballines. The Court can make this determination by looking at the Underlying

Complaint and the Policy; thus, it would be inappropriate to consider extrinsic evidence.

<u>See Clarendon Am. Ins. Co. v. State Farm Fire & Cas. Co.</u>, No. 3:11–CV–01344–BR,

2013 WL 54032, at *7 (D. Or. Jan. 3, 2013) (finding that the "narrow exception" outlined

in <u>Shearer</u> does not apply when it is possible to determine from the complaint and the

policy whether the individual seeking coverage is an insured).

## II.    Tires Exclusion

Even if Defendants could show that the Transfer of Ownership Exclusion does not

apply, Century Surety would not be required to defend Neri Auto in the Underlying

Lawsuit because of the Policy's Tires Exclusion. The Policy states that "this insurance

does not apply to":

### 19. Tires

a.  "Bodily injury," "property damage" or "personal and advertising injury," if
    added by endorsement, arising out of or resulting from:

> (1) The installation, inspection, repair, service or sale of any tires;
> (2) The failure of any "insured" or anyone else for whom any "insured" is
> or could be held liability [sic] to issue warnings related to the condition of
> any tires;
> (3) The negligent:
>> (a) Employment;
>> (b) Investigation;
>> (c) Supervision;
>> (d) Training; or
>> (e) Retention;
>> Of a person for whom any "insured" is or ever was legally
>> responsible and whose conduct would be excluded by 19a(1) or (2)
>> above;

b.  We shall have no duty to defend or indemnify any claim, demand, "suit,"
    action, litigation, arbitration, alternative dispute resolution, or other judicial or
    administrative proceeding seeking damages, equitable relief, or administrative
    relief where:
    > (1) Any actual or alleged injury arises out of any combination of a tire-
    > related cause and a non-tire-related cause;
    > (2) Any actual or alleged injury arises out of a chain of events which
    > includes allegations related to tires, regardless of whether the tire-
    > related event is the initial precipitating event or a substantial cause of
    > the injury; or
    > (3) Any actual or alleged injury arises out of a tire-related event as a
    > concurrent cause of injury regardless of whether the tire-related event
    > is the proximate cause of the injury

Policy at 37, 40.

Both parties agree that Oregon courts have not discussed a Tires Exclusion in any published cases. Century Surety argues that the plain language of the exclusion makes it clear that there is no duty to defend under the Policy against any lawsuit seeking damages that are alleged to have been caused by a tire-related incident. According to Century Surety, all of the Underlying Complaint's claims against Neri Auto relate to injuries arising out of a tire-related cause and thus, they are excluded from coverage under the Policy. Defendants argue[5] that the Tires Exclusion does not apply because none of the specific tire-related causes excluded by section 19a are applicable; Defendants' Sixth Claim for Relief in the Underlying Action alleges that Neri Auto failed to train members of the public about the dangers of the tires on the vehicles they were selling, which is not excluded under the Policy; Defendants' Seventh Claim for Relief in the Underlying Action alleges that Neri Auto negligently failed to remove the incident tire from the vehicle it was selling which is not excluded under the Policy; the Tires Exclusion does not apply to strict products liability; and the Tires Exclusion is overbroad and against public policy;

A.  The Tires Exclusion applies to Neri Auto

The Tires Exclusion applies to all of the claims against Neri Auto in the Underlying Complaint because of section "b" of the Tires Exclusion, which excludes coverage for all claims seeking relief where an injury arose out of "any combination of a tire-related cause and a non-tire related cause," "a chain of events which includes allegations related to tires," or "a tire-related event as a concurrent cause of injury." Policy at 40.

---

[5] As with the Transfer of Ownership Exclusion, the Court combines all of the arguments raised in Neri Auto's opposition to the motion for summary judgment and the other defendants' opposition brief, and addresses them together in this section of the Opinion.

The Tires Exclusion excludes coverage for injuries "arising out of or resulting from" tire-related causes and events. Oregon courts have construed the phrase "arising from" broadly in the context of insurance policy exclusions to mean "flowing from" or "having its origin in." Griggs v. Allstate Ins. Co., No. 3:12-CV-00463-MO, 2013 WL 840175, at *4 (D. Or. Mar. 6, 2013), aff'd, 650 F. App'x 487 (9th Cir. 2016) (citing Ristine ex rel. Ristine v. Hartford Ins. Co. of Midwest, 195 Or. App. 226, 231, 97 P.3d 1206, 1208 (2004)). "Arising from" has been interpreted to indicate "a causal connection, rather than a proximate causal connection." Griggs, 650 F. App'x at 489 (citing Ristine, 195 Or. App.  at 231, 97 P.3d at 1208).

For example, in Oakridge Comm. Ambulance v. United States Fidelity, an automobile insurance contract included a provision that the insurer would pay damages sustained by any person, "caused by accident and arising out of the ownership, maintenance or use of the automobile." 278 Or. 21, 25, 563 P.2d 164 (1977). The "automobile" in Oakridge was an ambulance that allegedly delayed in transporting an injured person. Id. at 26, 563 P.2d at 167. The ambulance owner, the insured, argued that if the injured person died because of the ambulance's delay, and if the delay was caused by negligence in the way the ambulance was maintained or operated, then the damages sustained by the person "aros[e] out of the maintenance or use of the automobile," and thus should be covered by the insurance contract. Id.at 27, 563 P.2d at 168. The Oregon Supreme Court agreed and explained that, "[t]he words 'arising out of' when used in such a provision are of broader significance than the words 'caused by', and are ordinarily understood to mean originating from, incident to, or having connection with the use of

the vehicle." Id. at 25, 166-67; see also Clinical Research Inst. of S. Oregon, P.C. v. Kemper Ins. Companies, 191 Or. App. 595, 601, 84 P.3d 147, 151 (2004).

Defendants argue that that Section "a" defines the "tire-related causes" of bodily injuries that are subsequently excluded by Section "b." The Court disagrees. Each of the two sections of the Tires Exclusion provides independent ways that coverage under the Policy is excluded. All of the Tires Exclusion provision is preceded by the introductory sentence on page 37 of the Policy, which states: "This insurance does not apply to:" Therefore, Section "a" of the Tires Exclusion is a continuation of that phrase, and the entire list that follows describes situations in which the insurance does not apply. Section "b" independently provides other situations in which Century Surety has no duty to defend or indemnify. In other words, Section "b" is not limited by the list in section "a" and section "a" does not define the "tire-related causes" that Section "b" excludes from coverage.

In sum, because Oregon courts construe "arising out of" broadly, all of the claims in the Underlying Complaint fall into at least one of these categories in the Policy's Tires Exclusion. Because the Tires Exclusion applies to all of the claims against Neri Auto in the Underlying Complaint, Century Surety is relieved from its duty to defend.

B.  Overbroad and Against Public Policy

According to Neri Auto, the Tires Exclusion is so broad that it could be read to exclude coverage for any motor vehicle accident. Thus, Neri Auto contends that it is void as overbroad and against public policy.

Neri Auto fails to cite any controlling authority in support of its argument that the Tires Exclusion is so broad that it violates public policy. Instead, it cites to a state court

case from Washington which found that an automobile insurance policy's "migrant workers' exclusion," which precluded coverage for bodily injury or property damages if the covered automobile was used to transport migrant workers, was unenforceable as against public policy. Mendoza v. Rivera-Chavez, 88 Wash. App. 261, 266, 945 P.2d 232, 235 (1997), aff'd, 140 Wash. 2d 659, 999 P.2d 29 (2000). The court explained that "[t]he practical effect of allowing a migrant workers exclusion is to deny insurance protection to whole families if a migrant worker is part of that family, and to deny protection to other potential innocent victims who may be injured by them." Id. at 267, 235. The court found that, therefore, the exclusion violated Washington's Financial Responsibility Act, which "creates a strong public policy in favor of assuring monetary protection and compensation to those persons who suffer injuries through the negligent use of public highways by others." Id. Further, the exclusion had an adverse disparate impact upon Hispanics and thus also violated the public policy reflected in Washington's law against discrimination. Id. (citing Washington state law protecting civil rights).

Neri Auto appears to argue that the Tires Exclusion in this case violates public policy reflected in Oregon's Financial Responsibility Act (FRA). Neri Auto cites State Farm Mutual Automobile Insurance Co. v. Farmers Insurance Exchange for the proposition that the purpose of the FRA is to "protect the innocent victims of vehicular accidents." Neri Auto's Resp. at 10 (citing to 238 Or. 285, 293, 387 P.2d 825, 828 (1963), adhered to, 238 Or. 285, 393 P.2d 768 (1964)). However, the Oregon Supreme Court in State Farm was discussing the circumstances under which an insurance company could use the defense of noncooperation of the insured in a case brought by an injured party against the insurer. Id. The Court also discussed the requirement that all automobile

liability policies contain a provision insuring policyholders against loss by reason of injuries inflicted by an uninsured motorist. State Farm, 238 Or. at 293, 393 P.2d at 828. The Court did not address any exclusions from coverage, nor did it address any factual scenario analogous to the case at hand. In sum, Neri Auto fails to show this Court how the Tires Exclusion violates any public policy in the FRA.

In contrast, Century Surety cites three cases from Oregon state courts and this District that found that broad exclusions did not necessarily violate public policy, as long as a variety of circumstances remained that would be covered by the insurance policy. For example, in an Oregon Court of Appeals case, a homeowner's liability and "umbrella liability" policy provided coverage for "discrimination because of race, color, religion or national origin," but excluded "discrimination prohibited by law." Hofsheier v. Farmers Ins. Exch., 154 Or. App. 538, 542, 963 P.2d 48, 50 (1998). The plaintiff argued that the exclusion was ambiguous and that, if it applied, the policy would exclude all coverage for discrimination. Id. The court rejected the plaintiff's argument by pointing out that there are areas of the common law that encompass aspects of discrimination. Id. Thus, the policy's exclusion of coverage did not serve to exclude all coverage for discrimination claims, just those brought under state or federal civil rights law. See also Employers-Shopmens Local 516 Pension Trust v. Travelers Cas. & Sur. Co. of Am., 235 Or. App. 573, 588, 235 P.3d 689, 698 (2010) (exclusion of trust administrators from coverage in insurance plan that covered pension and welfare trusts for losses from acts of dishonesty by trust administrators was not overbroad because not all trust administrators covered by the policy were independent contractors); Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Connecticut, No. CIV. 05-1315-JE, 2007 WL 464715, at *5 (D. Or. Feb. 7,

2007) ("Coverage of personal property in plaintiff's care is not illusory, because potential

losses occurring in a variety of other circumstances are covered.").

 As in <u>Hofsheier</u>, the Tires Exclusion in the Policy is not overbroad because it does

not serve to exclude from coverage all injury or damage caused by covered autos. For

example, it would not exclude coverage for an accident caused by faulty brakes. Instead,

it just excludes coverage where a cause of the accident is "tire-related." Such an

exclusion does not violate public policy.

## III. Contractual Duty of Care

 Neri Auto presents an additional argument regarding Century Surety's breach of

the duty of care in undertaking the duty to defend. According to Neri Auto, Century

Surety should be estopped from terminating its representation of Neri Auto.

 Neri Auto acknowledges that the general rule in Oregon is that estoppel cannot be

used to negate an express exclusion in an insurance policy. The Oregon Supreme Court

has explained:

> In <u>ABCD ... Vision v. Fireman's Fund Ins. Companies</u>, 304 Or. 301, 307, 744
> P.2d 998 (1987), this court held that "[e]stoppel cannot be invoked to expand
> insurance coverage or the scope of an insurance contract." The <u>ABCD ... Vision</u>
> court distinguished between using estoppel affirmatively, to *create* a right to
> coverage not contained in the insuring clauses of the policy, and using it
> defensively, to *preserve* a right to coverage already acquired by preventing its
> forfeiture. The court held that estoppel is not available in the former situation to
> negate an express exclusion in the written contract but is available in the latter
> situation to avoid a condition of forfeiture of coverage. 304 Or. at 307, 744 P.2d
> 998. In <u>Wyoming Sawmills v. Transportation Ins. Co.</u>, 282 Or. 401, 410, 578 P.2d
> 1253 (1978), this court had held that "the rule [precluding estoppel or waiver]
> must be limited to failure to assert an exclusion."

<u>DeJonge v. Mut. of Enumclaw</u>, 315 Or. 237, 241, 843 P.2d 914, 916 (1992); <u>see also</u>

<u>Deardorff v. Farnsworth</u>, 268 Or. App. 844, 853, 343 P.3d 687, 692, <u>review denied,</u> 358

Or. 145, 363 P.3d 1287 (2015) (applying <u>DeJonge</u> and reaffirming that—in the absence

of an insurance agent's interpretation of an ambiguous policy provision—estoppel cannot be used to negate an express exclusion in an insurance policy).

Neri Auto attempts to distinguish this case from the general rule by arguing that the harm it suffered resulted from Neri Auto's reliance upon Century Surety's contractual promise to provide it with a defense. The Court does not find, and Neri Auto does not provide, any legal support for this argument. Neri Auto's ability or inability to seek other remedies from Century Surety regarding its quality of legal representation have no bearing on whether Century Surety has a continuing duty to defend. Therefore, Neri Auto's argument is unavailing.

## CONCLUSION

The Policy's Transfer of Ownership Exclusion and Tires Exclusion exclude from coverage the claims brought in the Underlying Lawsuit. Therefore, Century Surety does not have a duty to defend Neri Auto. The Court grants Century Surety's Motion for Partial Summary Judgment  [25].

IT IS SO ORDERED.


Dated this ____8_____ day of _____December_____, 2016.



_____
                    MARCO A. HERNÁNDEZ
                    United States District Judge